Filed 11/19/20  Marriage of Cook CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of KIRSTEN BLANCHARD and KENNETH ALAN COOK. | |
| KIRSTEN BLANCHARD COOK, Appellant, v. KENNETH ALAN COOK, Respondent. | G058387 (Super. Ct. No. 09D000398) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Scott B. Cooper, Judge.  Affirmed.

Law Offices of J. Christian Conrad and Lisa L. Renaud for Appellant.

No appearance for Respondent.

\*          \*          \*

INTRODUCTION

In our prior opinion, *In re Marriage of Cook* (June 22, 2018, G054256) (nonpub. opn.) (*Cook I*), we affirmed a domestic violence restraining order requiring Kirsten Blanchard Cook to stay away from her former husband Kenneth Alan Cook and their then minor son for a period of three years.[1] In 2019, the trial court amended the restraining order to remove the parties' now adult son as a protected party and granted Alan's request to renew the order as so amended.

Kirsten contends insufficient evidence supports the court's finding Alan has a genuine and reasonable apprehension of future abuse by Kirsten and the trial court otherwise abused its discretion by renewing the restraining order. We reject Kirsten's contentions of error and affirm.

BACKGROUND

I.

THE PETITION FOR A DOMESTIC VIOLENCE RESTRAINING ORDER

In February 2016, Alan filed a request for a domestic violence restraining order (the petition) in which he sought a restraining order against Kirsten to protect himself and their then 17-year-old daughter and 15-year-old son. In the petition, Alan stated the trial court had restricted Kirsten's contact with their children to monitored visitation; Alan had sole legal and physical custody of the children and Kirsten was not permitted unplanned, unmonitored, or unsupervised contact with them. Alan further stated that Kirsten had a history of irrational behavior. He explained that, on the one hand, she had accused him of abuse and harassment in various court filings and asserted she fled the country for fear of violence by him, but, on the other hand, on February 4, 2016, she showed up unannounced and uninvited in the driveway of the home he shared

---

[1] For clarity, we refer to Kirsten Blanchard Cook as Kirsten and Kenneth Alan Cook as Alan. We intend no disrespect.

2

with their children.  Alan stated he was fearful that Kirsten would continue to escalate her intimidation, surveillance, stalking, and threatening actions that disrupted his and their children's peace.

## II.
### THE HEARING ON THE PETITION

At the hearing, Alan testified about the behavior he described in the petition.  He testified that Kirsten had asserted she feared for her life because of him, but then on February 4, 2016, she showed up at his residence twice, notwithstanding the facts the children lived there (who were not home at the time) and Kirsten was not permitted unplanned, unmonitored contact with them.  Alan was also concerned that she knew where he lived because his address was supposed to be confidential and not listed in court records.  Alan testified that when Kirsten appeared at his residence, she was accompanied by a woman whose telephone Kirsten once used to contact the children in violation of the court's contact orders.  Alan further testified that he called the number that was used to call the children and spoke with a man he did not know who threatened Alan.

Alan presented evidence of letters Kirsten wrote to the children in violation of the monitored contact order.  He also produced evidence of four e-mails Kirsten wrote to him that were in his opinion "highly abusive, verbally abusive."

## III.
### THE TRIAL COURT GRANTS THE PETITION AND ISSUES A DOMESTIC VIOLENCE RESTRAINING ORDER AGAINST KIRSTEN.

The court granted the petition and issued a domestic violence restraining order against Kirsten for a period of three years, expiring on September 15, 2019, protecting Alan and their then minor son (their daughter turned 18 years old during the course of the proceedings).  The court's order provided that Kirsten must not "[h]arass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate (on the

3

Internet, electronically or otherwise), or block movements." The order further provided that Kirsten not "[c]ontact [Alan or their minor son], either directly or indirectly, by any means, including, but not limited to, by telephone, mail, e-mail, or other electronic means" and must not "[t]ake any action, directly or through others, to obtain the addresses or locations of any protected persons." The court also ordered Kirsten to stay at least 100 yards away from (1) Alan and their then minor son, (2) their home, (3) Alan's job and vehicle, and (4) their son's school. The court ordered Kirsten to complete a 26-week anger management program.

Kirsten appealed. In *Cook I, supra*, G054256, we affirmed the order, rejecting each of Kirsten's contentions of error including that insufficient evidence supported issuing the order.

IV.

### THE REQUEST TO RENEW THE RESTRAINING ORDER, KIRSTEN'S RESPONSE, AND THE HEARING

In July 2019, Alan filed a request to renew the restraining order scheduled to expire on September 15, 2019 and to make it permanent. The request stated renewal of the restraining order was warranted because Kirsten violated the restraining order and because Alan was afraid Kirsten would abuse him in the future.

Alan filed a declaration in support of his request stating that Kirsten had created a publicly accessible Web site "uploading and releasing [Alan]'s and the then minor children's confidential medical, social service agency, and court records." Although in May 2017 the trial court ordered that the Web site be taken down and sanctioned Kirsten "for the seriousness of her conduct," the Web site, which has been modified, remains.

In his declaration, Alan described several incidents which reflected Kirsten's noncompliance with court orders, suspicious and concerning behavior, and threats against him.

4

On April 27, 2018, Kirsten violated the restraining order by contacting their then minor son via text message and also by cell phone; their son answered the call but Kirsten ended the call without speaking.

On August 9, 2018, Alan and Kirsten appeared in court for a child support hearing. While Alan was sitting in his vehicle in the visitor parking lot, he saw a woman, who had been in court with Kirsten, standing behind his vehicle taking photos of it. He got out of his car to take a picture of her. In response, she began walking toward the parking structure while accusing Alan of harassing her and telling him to leave her alone. Alan noticed a man, who he recognized as a friend of Kirsten's, standing behind the second story window of the parking structure, waving and appearing to take photos of him. Alan also heard what he believed was Kirsten's laugh in the background. Alan took a picture of the man; he believes the picture he took shows Kirsten standing next to the man.

Alan also stated in his declaration that Kirsten "has stalked me to obtain my private home address and now has it. On no less than three occasions [Kirsten] has sent 'unregistered process servers' to my home despite the address not being listed in Court records. No 'personal service' of documents has been necessary but she sends these people to harass me in front of my neighbors. If personal service was necessary, registered process servers or Orange County Sheriff could be used." Alan stated that on October 12, 2018, Kirsten appeared at his service address which is a mailbox location. Kirsten yelled at the counterperson to take documents from her although Kirsten may not personally serve her own documents. The person at the counter contacted Alan about the incident and identified Kirsten.

In his declaration, Alan further stated that Kirsten sees herself as a victim and feels therefore justified in violating the court's orders. He stated: "Her behavior is unpredictable and creates risk to [Alan]'s personal and professional life." Alan stated that Kirsten failed to enroll in the 26-week anger management program as ordered by the

trial court, she resides less than seven miles from Alan's residence, and she admits having psychological issues and a record of attempting to harm herself.

Alan stated he "remains with a reasonable fear of further abuse by [Kirsten]. [Kirsten] has shown no willingness to voluntarily comply [with] ANY order of the Court whether [it] is Child Support or a Domestic Violence Restraining Order . . . . [¶] [Kirsten] has violated the current, in-force, domestic violence restraining order and shows contempt for the Court's order. [¶] [Kirsten] AND her prior accomplices implicated in threats against [Alan] and documented in Police reports live within close proximity of [Alan]."

In response, Kirsten filed a "declaration for motion for clarification" in which she largely denied Alan's claims but admitted contacting their then minor son. She denied being present during the incident involving her associate taking photographs of Alan's vehicle. She denied sending unregistered process servers to his home or having appeared at his service address and yelling at the counter person. She claimed that a permanent restraining order would negatively impact her ability to procure work as a schoolteacher.

At the hearing on the renewal request, Alan testified about the incidents and circumstances described in his declaration. He also testified about nine voicemail messages Kirsten had left for their daughter in which Kirsten accuses Alan of "taking everything," threatening Kirsten and other family members, "stealing all the money," and "alienating the children." Alan testified Kirsten appears unable to get past her anger toward him and writes untrue and disparaging things about Alan to their children.

Kirsten testified that she had contacted their then minor son in violation of the restraining order. She denied being present in the parking lot on August 9, 2018 or appearing at his service mail address. Kirsten testified she completed the 26-week anger management program.

6

Kirsten called Thomas Lillard as a witness who testified that on August 9, 2018, Kirsten was next to him on the second floor of the parking garage when another woman took pictures of Alan.[2]

During Kirsten's cross-examination of Alan, Kirsten inquired about whether Alan had physically or emotionally abused their oldest son, who had committed suicide in 2014, and also about her wrongful death claims against Alan. The trial court sustained Alan's objection, informing Kirsten: "For you to keep sort of bringing it up and pushing on the issue I think is meant to push buttons, and I don't want that to happen here, especially on that issue."

V.

### THE TRIAL COURT RENEWS THE DOMESTIC VIOLENCE RESTRAINING ORDER FOR FIVE YEARS.

At the hearing, the court found it was more probable than not that there was a sufficient risk of future abuse to find Alan's stated apprehension of Kirsten genuine and reasonable. The court explained that its determination was based in part on consideration of the abuse that led to the initial restraining order in September 2016, which consisted of harassment and disturbing Alan's peace by showing up at Alan's and their children's home unnecessarily despite a court order prohibiting unmonitored contact with their children at that time, disparaging Alan to their children, blaming him for their deceased son's suicide, and multiple disturbing and threatening e-mail messages, again blaming Alan for their son's death and calling Alan a murderer.

The court stated it considered "what's happened since the original restraining order" in reaching the determination Alan has a reasonable apprehension that, without the protection of a restraining order, this type of abuse would continue in the future. The court cited Kirsten's multiple lengthy voicemails and texts to their daughter,

---

[2]  Alan testified the window where they were standing was about 25 yards away from him.

explaining: "The court wants to make it clear, it is not concerned about the fact that [Kirsten] is contacting her now adult daughter. [¶] Absent any other order, [Kirsten] certainly has the right to do so. It's the content of this—these messages that concerns the Court. In those messages, she demonstrates a continued obsessive-like focus on [Alan], blaming him for a multitude of issues, essentially, ruining her life. And she, again, goes back to the death of [their son] multiple times in these messages."

The court cited the fact that Kirsten contacted their then minor son in violation of the restraining order. The court also found Alan's version of events regarding the August 9, 2018 parking lot incident credible and found Kirsten was present and well within 100 yards of Alan. The court noted Kirsten was not present on that occasion to simply get to her car following a court hearing, but to watch while her associates took pictures of Alan; one such associate stood right behind Alan's vehicle to do so.

The court stated it also took note of Kirsten's cross-examination of Alan at the hearing on the request to renew the restraining order "when she chose to ask [Alan] multiple questions about her claims that he had physically and emotionally abused [their deceased son] and had caused his death, even though that issue was not relevant to the issues being raised in this renewal proceeding." The court explained: "On that issue, the Court will note that it is not granting the request based on [Kirsten]'s litigation activities either in this court or in other courts. The Court is simply noting that these questions in this proceeding lend further credence to [Alan]'s apprehension that absent a continued restraining order [Kirsten] will go back to engaging in the same sort of activity outside of court, that [the trial court previously] determined constituted abuse under the Domestic Violence [Prevention] Act in granting the initial restraining order request."[3]

---

[3] The court further stated: "[T]he Court would like to note that it is not making its ruling in relying solely on these questions that were asked in this proceeding and finds that the

8

The court acknowledged Kirsten's argument that there was no other evidence of her violating the restraining order directly as to Alan or her having out-of-court contact with him. The court explained: "However, as the case law has pointed out, additional violations of the restraining order, since its issuance, [are] not required in order to receive a renewal of a restraining order. And can actually be viewed as a reason to continue the order since it appears to have had its intended effect for the last three years, at least for the most part."

The court found that Kirsten had not shown that the renewal of the restraining order would materially burden her or would cause a burden that outweighs the need for the order given Alan's reasonable apprehension. The court noted that while Kirsten speculated that the fact of the restraining order negatively impacted her ability to be employed, she provided no evidence to support that speculation and had informed the court during the hearing that she had secured a new job—"or at least was very, very close to doing so, and at the very least, had received an interview for that job."

The court first amended the original restraining order to remove the now adult son from being listed as an additional protected person and also to remove reference to the requirement that Kirsten complete anger management classes because she has satisfied that requirement. The court denied Alan's request that the restraining order be made permanent and instead issued a renewed restraining order, as amended, for a period of five years, expiring September 15, 2024.

Kirsten appealed.

---

other evidence cited by the Court previously would even, in the absence of these questions, be enough to find [Alan]'s apprehension reasonable and grant the request."

DISCUSSION

Kirsten argues the trial court abused its discretion by granting the renewal request Alan brought under the Domestic Violence Prevention Act (Fam. Code §6200 et seq.).[4] Kirsten's argument is without merit.

I.

GENERAL LEGAL PRINCIPLES GOVERNING RENEWALS OF DOMESTIC VIOLENCE RESTRAINING ORDERS AND THE APPLICABLE STANDARD OF REVIEW.

The Domestic Violence Prevention Act's purpose "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) The term "abuse" is defined in section 6203 as intentionally or recklessly causing or attempting to cause bodily injury (*id.*, subd. (a)(1)); committing a sexual assault (*id.*, subd. (a)(2)); placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another person (*id.*, subd. (a)(3)); or "behavior that has been or could be enjoined pursuant to Section 6320" (*id.*, subd. (a)(4)).

Section 6320 in turn permits the court to enjoin a party from "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, . . . or disturbing the peace of the other party." (*Id.*, subd. (a).) As a result, abuse under the Domestic Violence Prevention Act includes physical abuse or injury, as well as acts that "destroy[] the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497; see § 6203, subd. (b) ["Abuse is not limited to the actual infliction of physical injury or assault"].) Courts construe the Domestic Violence Prevention Act liberally. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

---

[4] All further statutory references are to the Family Code.

10

Section 6345, subdivision (a) provides for the renewal of a domestic violence restraining order: "In the discretion of the court, the personal conduct, stay-away, and residence exclusion orders contained in a court order issued after notice and a hearing under this article may have a duration of not more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. These orders may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party."

In the context of renewal requests, "[t]he key consideration for the court is not the type or timing of abuse, but whether the protected party has a reasonable fear of future abuse. 'A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse.'" (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 397.)

We review the trial court's ruling on a request to renew a domestic violence restraining order for an abuse of discretion. (*Perez v. Torres-Hernandez, supra*, 1 Cal.App.5th at p. 396.) "'An abuse of discretion occurs when the ruling exceeds the bounds of reason. [Citation.] But, the exercise of discretion is not unfettered in such cases. [Citation.] "All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.

11

[Citation.]" [Citation.] The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation].' [Citation.] [¶] In reviewing the denial of a [domestic violence restraining order] request, we determine whether the trial court '"applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court."'" (*Id.* at pp. 396-397.)

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY RENEWING THE DOMESTIC VIOLENCE RESTRAINING ORDER.

Our record shows the trial court was aware of and applied the correct standard: genuine and reasonable apprehension of future abuse. Kirsten does not argue otherwise.

In her appellate opening brief, Kirsten argues insufficient evidence supports the order renewing the restraining order. We disagree.

Alan stated in his declaration and testified at the hearing he had a genuine apprehension of future abuse by Kirsten unless the restraining order was renewed. The trial court was within its discretion to find Alan's testimony credible. In her opening brief, Kirsten argues the trial court abused its discretion by finding Alan credible. Credibility determinations, however, are the province of the trial court. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 182.) The trial court expressly stated that it

12

weighed the witnesses' credibility. Our record does not show Alan's testimony was not credible.[5]

As for the reasonableness of Alan's apprehension of future abuse, Kirsten admitted that she violated the restraining order by contacting their then minor son. In addition, the trial court stated it believed Alan's testimony that on August 9, 2018, following a court hearing, he saw a woman who had accompanied Kirsten at the hearing standing behind his car taking pictures of it. Alan saw, within 100 yards of where he was standing, another of Kirsten's associates, later identified as Lillard, waving and appearing to take pictures. Alan testified he thought he heard Kirsten laugh and that she might have been standing next to Lillard. Although at the hearing Kirsten denied being present, Lillard testified that Kirsten had been standing next to him during this incident. In her appellate opening brief, Kirsten argues that her presence with Lillard in the parking structure at the time of the August 9, 2018 incident was a mere coincidence. Based on the evidence of the surrounding circumstances, the trial court did not find Kirsten's presence coincidental.

---

[5] At oral argument, Kirsten argued the trial court erroneously excluded from evidence a color coded "harassment infographic" Kirsten created which purports to identify points in time in which Alan initiated different forms of contact (e.g., electronic, in person, social media, "tortious interference") with Kirsten and/or her associates during the three-year period of the original restraining order. The exhibit does not otherwise provide any information about any identified contact, although in her declaration, Kirsten stated the infographic is "backed with documentation and can be provided at court." She argued the exhibit showed Alan lacked a genuine apprehension of future harm. At the hearing on the renewal request, Alan objected to the timeline on grounds that it was irrelevant and constituted a "subjective assessment that has no foundation." The court sustained Alan's objection to the evidence. Kirsten did not explain in her opening brief or at oral argument why the court's ruling sustaining Alan's objections to the exhibit constituted an abuse of discretion.

In any event, Kirsten does not show she suffered prejudice. She does not identify any evidentiary ruling she contends improperly barred any particular testimony or other documentary evidence of any contacts initiated by Alan that she offered to prove he lacked a genuine apprehension of future abuse.

Even if Kirsten's presence during the August 9, 2018 incident did not constitute a violation of the restraining order,[6] it supports the court's ultimate finding that Alan's apprehension of future abuse by Kirsten was reasonable. Such evidence supports Alan's specific expressed fear that Kirsten will continue her efforts to enlist others to harass him and otherwise disturb his peace if the restraining order were not renewed.

As pointed out by the trial court, evidence that Kirsten had violated the restraining order with respect to Alan directly was not required before a renewed restraining order might be issued. (See § 6345, subd. (a) [domestic violence restraining orders may be renewed "without a showing of any further abuse since the issuance of the original order"]; *Priscila N. v. Leonardo G.* (2017) 17 Cal.App.5th 1208, 1215 ["obtaining renewal of an existing order does not require proof that recent acts of abuse have occurred"]; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1284 ["It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order"].)

Substantial evidence also shows Kirsten sent multiple lengthy messages to their adult daughter which reflect Kirsten's "obsessive-like focus" on Alan by continuing to blame him for a variety of problems, including their son's death, and, ultimately, for ruining her life. The court observed that during Kirsten's cross-examination of Alan, she chose to ask him questions about whether he had physically and emotionally abused their son and caused his death, even though those issues were not relevant to the issue before the court whether to renew the restraining order against Kirsten.[7]

---

[6] The court did not specifically state whether it found Kirsten's presence during the August 9, 2018 incident a violation of the restraining order.

[7] Both Alan and Kirsten were self-represented at the hearing. In explaining its ruling, the court clarified that it was not relying solely on Kirsten's decision to pursue an irrelevant and improper line of questioning during her cross-examination of Alan and that, even absent that line of inquiry, the other evidence "previously" cited by the court, which included evidence of her violation of the restraining order as to their then minor son, the content of the e-mails to their daughter, and the August 9, 2018 incident, would

The above-cited evidence supports the court's finding Kirsten has not yet moved on with her life in a manner that would reduce the chance of her committing future acts of abuse against Alan. (See *Ritchie v. Konrad, supra*, 115 Cal.App.4th at p. 1291 [in considering whether to renew a domestic violence restraining order, the court should consider "significant changes in the circumstances surrounding the events justifying the initial protective order [including whether] the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order"].)

In her appellate opening brief, Kirsten argues the trial court erred "by not classifying [Alan]'s testimony and evidence as petitioning activity of Kirsten and others, and therefore could not support [Alan]'s reasonable apprehension." Kirsten's argument is without merit as the trial court expressly stated that its decision to renew the restraining order was not based on any of Kirsten's litigation activities in any court.

We also reject Kirsten's argument that the trial court improperly weighed the effect a renewed restraining order would have on the parties, respectively. The court expressly stated it considered the burden on Kirsten of renewing the restraining order and found that Kirsten had failed to show it would impose a material burden on her. The court also stated Kirsten failed to show that any burden it might cause would outweigh the necessity for it given Alan's reasonable apprehension. The court stated Kirsten "did state her belief, her speculation that the existence of the order might have caused her not to get a job or not to get interviews for certain jobs she applied to, but she provided no actual evidence that that had happened. [¶] The Court will note that in other aspects of this litigation, [Kirsten] has blamed her inability to get work on many factors other than

---

be enough to find Alan's apprehension reasonable to renew the restraining order. In her appellate opening brief, Kirsten misconstrues the trial court's comments to mean that it found the evidence underlying the original restraining order was alone sufficient to support a renewed restraining order; the transcript of the hearing does not support Kirsten's interpretation.

15

the existence of the restraining order. [¶] Finally, [Kirsten] specifically referenced in the last hearing that she had secured a new job or at least was very, very close to doing so, and at the very least, had received an interview for that job."

## DISPOSITION

The order is affirmed. Because respondent did not appear, no costs are awarded.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

16