Filed 8/12/22  Yingling v. Fercu CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| KIMLAI YINGLING, | B308330 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LS029357) |
| v. | |
| ADRIAN FERCU, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael R. Amerian, Judge.  Affirmed.

Law Offices of Michael Labrum and Michael Labrum for Defendant and Appellant.

Beaumont Tashjian, Tara M. Radley and Kumar S. Raja for Plaintiff and Respondent.

**INTRODUCTION**

In 2017 Kimali Yingling obtained a civil harassment restraining order against her neighbor in a condominium complex, Adrian Fercu. Three years later, Yingling sought to renew the restraining order. The trial court granted the request, and Fercu appealed.

We conclude, contrary to Fercu's assertions, the trial court did not (1) err in precluding Fercu from introducing evidence he claimed would undermine the basis of the original restraining order or (2) abuse its discretion in finding there was a reasonable likelihood Fercu would harass Yingling in the future. Therefore, we affirm the trial court's order renewing the restraining order.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *Yingling Obtains a Restraining Order Against Fercu*

Yingling and Fercu lived in different units near each other in a condominium cooperative managed by a board of directors. Since at least 2017 Yingling has served on the cooperative's board and regularly attended board meetings. Fercu, though not a member of the board, attended board meetings in 2017.

In April 2017 Yingling filed a request for a civil harassment restraining order against Fercu. Yingling alleged Fercu had harassed her in various ways, including threatening her in text messages, slandering her in front of vendors and other residents, posting defamatory "signs" about her, and "displaying forceful and intimidating behavior" that caused her "to feel fear and anxiety in his presence." She stated: "His presence is unsettling to the point where I'm afraid to leave my unit for fear he will be

waiting for me. I sense that he is extremely unpredictable." Yingling asked for a temporary restraining order without giving Fercu notice because she was afraid "violence would reoccur" if she gave notice and she believed that, if she gave notice, Fercu would "demonstrate unpredictable [and] irrational behavior and possibly retaliate."

In April 2017 the superior court issued a temporary restraining order enjoining Fercu from contacting, harassing, intimidating, or threatening Yingling. The court also ordered Fercu to stay at least 100 yards from Yingling, her home, workplace, and vehicle, and at least 20 feet away from her at board meetings.

In May 2017 the superior court held a hearing on Yingling's request for a permanent restraining order. Fercu did not attend the hearing, although he was served with notice of the hearing. The trial court granted Yingling's request and issued a permanent restraining order enjoining until May 2020 the same conduct the temporary restraining had enjoined. Fercu did not appeal from the order granting Yingling's request for a restraining order.

B.     *The Trial Court Renews the Restraining Order*

In May 2020 Yingling filed a timely request to renew the restraining order. Yingling stated that Fercu "still . . . resides in close proximity to me" and that the "current restraining order against Adrien Fercu is the only thing that has caused him to keep his distance from me over the past few years and to allow me to continue to live my life." She stated that, "[b]efore the permanent restraining order was issued, Fercu was stalking me at my apartment, leaving threatening/vulgar notes on my

apartment door and carport and screaming obscenities at me in the common areas" and that she feared "he will resume this conduct if the order is not renewed." She also stated: "I am still president of my cooperative's Board of Directors and remain very active in the community. I need to be able to freely traverse the cooperative's property, communicate with residents and vendors, conduct board meetings and oversee management of the cooperative. Fercu is still a shareholder and resident of the cooperative and resides in close proximity to me (our units are located within the same complex). A renewed restraining order is necessary to keep Fercu from continuing to harass me and to allow me to be present in my community without his interference, threats and stalking."

In July 2020 the trial court (a different judge) held a hearing on the request to renew the restraining order. At the hearing, counsel for Yingling asked the court to renew the restraining order because "the circumstances regarding the parties' living conditions" had not changed. Counsel for Yingling also argued Yingling is "still the board president. She still needs to conduct board meetings. She still needs to be able to walk the property" and "to be able to do that free of Mr. Fercu's harassment." Yingling did not submit any evidence of new harassment by Fercu.

Fercu attempted to challenge the validity of the original restraining order. He testified that Yingling "slapped [him] in the face" in April 2017 and that he had not been served with the original petition for a restraining order. The trial court, however, precluded Fercu from introducing evidence he claimed would show that the court in 2017 should not have issued the restraining order. The trial court said it did not want "to

4

relitigate and rehear the facts of the hearing that gave rise to the restraining order three years ago. So it sounds like you want to retry the case. I'm not doing that." The trial court stated that "all of this needed to be dealt with three years ago. It's too late for me to look back at why the restraining order was issued initially." Fercu stated, "Okay."

The trial court explained it was "focused on whether or not there's a reasonable likelihood of future harassment" and asked Fercu to address whether he and Yingling still lived in the same complex and attended board meetings in person. Fercu acknowledged that he still lived near Yingling, but stressed that, since the court issued the restraining order, there had been no new incidents of harassment. The trial court found that there was "a reasonable likelihood of future harassment" and that there was "good cause to renew the restraining order" because both parties "still live in the same location and there's no indication that either side's going to be moving out any time soon."

Fercu argued that he never harassed Yingling and that the court was violating his rights. The trial court stated that "the request to renew doesn't have me go back and look at the reason . . . the original restraining order [was] issued. It doesn't require there to be any new activity that is harassing. What I have to look at is whether there's a reasonable likelihood of future harassment." The trial court also stated: "The fact that you're still living at the same complex leads me to conclude that there is. So, I understand that you may not be happy with my decision,

but that's my decision." The trial court renewed the restraining order for five years. Fercu filed a timely notice of appeal.

## DISCUSSION

Fercu argues the trial court erred in relying exclusively "on the fact that the parties resided in the same condominium complex" and in refusing to consider "evidence mitigating the initial allegations" in Yingling's 2017 petition for a restraining order. Neither argument has merit.

A. *Applicable Law and Standard of Review*

Code of Civil Procedure section 527.6 governs civil harassment restraining orders.[1] A court may issue a restraining order if the petitioner shows "by clear and convincing evidence that unlawful harassment exists." (§ 527.6, subd. (i).) Section 527.6 defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) The court can issue a restraining order for up to five years. (§ 527.6, subd. (j)(1).) We review an order granting a request to renew a restraining order for an abuse of discretion. (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 396; *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90.)

---

[1] Statutory references are to the Code of Civil Procedure.

B. *The Trial Court Did Not Err in Relying on the Fact That Yingling and Fercu Still Lived Near Each Other*

Fercu argues that the "trial court's reliance on the fact that the parties resided in the same condominium complex is insufficient evidence to support that granting of the request to renew the restraining order" and that the court erred by "automatically grant[ing] the renewal request without any further showing by" Yingling.

The trial court did not abuse its discretion in renewing the restraining order. A restraining order "may be renewed, upon the request of a party, for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order . . . ." (§ 527.6, subd. (j)(1).)[2] "A restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future." (*Cooper v. Bettinger, supra*, 242 Cal.App.4th at p. 90; see *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495.) "[R]enewal under section 527.6, subdivision (j)(1), is not automatic; instead the trial court has discretion to renew the restraining order and the duration of the restraining order." (*Cooper*, at p. 89.)

Fercu does not argue the court erred in considering how close the parties lived to each other. Section 526.7 does not limit the factors a court can consider in deciding whether to renew a restraining order, instead authorizing the court to consider "any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment." (*Harris v. Stampolis, supra*, 248 Cal.App.4th at p. 501; see § 527.6, subd. (i) [at the hearing on a petition for a restraining

---

2    Fercu does not argue the five-year renewal was too long.

7

order, "the judge shall receive any testimony that is relevant, and may make an independent inquiry"].) Fercu argues only that the "mere fact that the parties live in the same condominium complex is not a reasonably sufficient basis for the finding that the restrained activity is likely to recur."

Fercu provides no authority for his assertion that evidence a restrained party and a protected party continue to live in the same vicinity is insufficient to support an order renewing a restraining order. Indeed, the law is to the contrary: To renew a restraining order, the protected party need not present any evidence at all. (See *Cooper v. Bettinger*, *supra*, 242 Cal.App.4th at p. 91 [section 527.6 "grants the trial court discretion to renew a restraining order based on its review of the record of the past harassment underlying the original issuance of the restraining order and without the protected party presenting any new evidence"].)

Moreover, additional evidence supported the trial court's order. Yingling stated not only that Fercu still lived near her, but also that she was still president of the cooperative board and that her duties required her to interact with other residents and supervise the business of the cooperative. She stated the restraining order was the only reason she was able to fulfill her duties as president. For his part, Fercu testified he had a right to attend board meetings, thus creating additional opportunities for him to encounter and harass Yingling. (See *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 190 ["Behavior that may not alone constitute an intentionally harassing course of conduct logically still might show an intention to resume or continue an already-established course of harassing conduct."].) Fercu also denied he had ever done anything wrong. He testified he "didn't do

8

anything to this lady" and said, "What evidence? I didn't do anything, your honor, please." The trial court could reasonably infer from this testimony Fercu lacked remorse for his past harassment of Yingling, or even understood his past conduct constituted harassment, an inference that further supported renewing the restraining order. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 240 [denial of past conduct is evidence of a continuing risk]; *In re Marriage of Emilie D.L.M. & Carlos C.* (2021) 64 Cal.App.5th 876, 882 ["'[o]ne cannot correct a problem one fails to acknowledge'"].)

C.      *The Trial Court Did Not Err in Prohibiting Fercu from Introducing Evidence Challenging the Validity of the Original Restraining Order*

Fercu also contends the trial court erred in precluding him from introducing evidence challenging the court's decision in 2017 to issue a restraining order. According to Fercu, by precluding him in 2020 from introducing evidence that would show his conduct in 2017 did not justify a restraining order, the court violated his due process rights and was unable "to consider all surrounding circumstances of the case to determine the likelihood of future harm."

The trial court did not err in denying Fercu's attempts to challenge the validity of the original restraining order. "[W]here a protected party seeks a renewal of a restraining order and the restrained party has either failed to appeal . . . or has lost on appeal, the restrained party cannot challenge the findings and evidence underlying that original order [or] the validity of that order." (*Cooper v. Bettinger*, *supra*, 242 Cal.App.4th at p. 92.) Fercu did not appeal from the original restraining order. Thus,

as Fercu concedes, he cannot "challenge the evidence, findings, and validity of the original restraining order." Yet, that is what Fercu argues the trial court should have allowed him to do. The trial court properly precluded Fercu from presenting evidence and testimony that he claimed undermined the original restraining order.

Fercu also argues the court should have considered that "the original request for a restraining order did not allege violence." But Yingling did not have to allege or prove violence to obtain a restraining order; she had to allege and prove harassment, which can be nonviolent. (See § 527.6, subd. (b)(3).) In any event, there was evidence Fercu's pre-restraining order conduct was violent. As discussed, Yingling stated in support of her request for the original restraining order that Fercu "used or threatened to use violence against" her. After issuing the original restraining order, the court ordered the sheriff to serve the order without charge because the order was "based on unlawful violence, a credible threat of violence, or stalking."

## DISPOSITION

The order renewing the restraining order is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


WISE, J.*

---

*        Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11