Filed 6/9/16  Certified for Publication 7/11/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARIA DE LA LUZ PEREZ,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>JOB FRANCISCO TORRES-<br>HERNANDEZ,<br><br>     Defendant and Respondent. | A139710<br><br>(Alameda County<br>Super. Ct. No. HF10499992) |

**I.**

**INTRODUCTION**

Appellant Maria del la Luz Perez (Perez) appeals the trial court's denial of the renewal of her domestic violence restraining order (DVRO) against respondent Job Francisco Torres-Hernandez (Torres-Hernandez). Perez alleges that the trial court applied the incorrect legal standard in denying her petition. She asserts the court erroneously concluded that: (1) there must be new evidence of abuse or threatened abuse to renew the order, and Torres-Hernandez's past abuse or violations of the existing order did not support renewal; (2) the evidence of "new" abuse must be physical in nature; and (3) evidence of Torres-Hernandez's abuse of the couple's children was not relevant to the DVRO renewal. We agree the court erred in all of these respects, and reverse with directions to grant renewal of the DVRO.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2010, Perez filed a request for a DVRO against Torres-Hernandez to stay away from her and their two children, eight and two-year-old daughters, as well as Perez's ten-year-old son from a previous relationship. Perez and Torres-Hernandez had been in a relationship for 10 years and Perez claimed many instances of physical and emotional abuse by Torres-Hernandez. She wrote on the request for the DVRO that Torres-Hernandez was going to kill her and take her children away. In her declaration, she recounted an incident where Torres-Hernandez became angry and yelled "fuck you bitch" at her in front of the children. She said the following day, Torres-Hernandez called her hundreds of times. A few days later, Torres-Hernandez came into her home while she was gone, and without her permission. Later that same day, in the middle of the night, Torres-Hernandez again broke into her home while everyone was sleeping. He startled a friend who was sleeping on the couch and rushed out. She said that she was afraid because Torres-Hernandez was capable of becoming violent and had hit her many times in the past.

The court held a hearing and both Perez and Torres-Hernandez testified. The court issued a three-year restraining order preventing Torres-Hernandez from doing the following things to Perez: "[h]arass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements." The order provided sole physical custody of the children to Perez, and weekend visitation with Torres-Hernandez. The restraining order expired on March 16, 2013.

In September 2011, Perez filed a petition to modify the restraining order to include protection for her three children. Perez claimed that during Torres-Hernandez's visits with the children, he had physically abused them. After a visit with Torres-Hernandez, their younger daughter had bruising on her chest. The daughter told Perez that Torres-Hernandez was angry and hit her. Torres-Hernandez was arrested after the incident.

2

Perez explained that Torres-Hernandez had been abusive to her throughout their relationship but had not previously hit the children. She said that since the restraining order was issued, Torres-Hernandez had hit the children with his hands or objects, including shoes. He had previously hit the younger daughter causing bruising on her lip. Perez claimed that Torres-Hernandez also hit her son with a belt causing a welt on his leg.

The court suspended visitation between Torres-Hernandez and the younger daughter and ordered supervised visitation with the older daughter. The court amended the order to prohibit Torres-Hernandez from making contact with Perez including phone calls, e-mails, and text messages.

In February 2013, Perez petitioned the court for a permanent renewal of the restraining order. Perez alleged that Torres-Hernandez had repeatedly violated the order. He called her from an anonymous number but identified himself as the caller and told her to stop going to court and to stop asking for child support. She also alleged that Torres-Hernandez was facing child abuse charges for hitting their younger daughter.

The court held a contested hearing on March 13, 2013. At the outset, Torres-Hernandez explained that the criminal case for his conduct toward his daughter had been dismissed. When asked by the court, Perez explained that the district attorney's office had told her that the charges were dropped because their daughter was too young to testify against Torres-Hernandez.

Perez testified that she sought to have the restraining order extended permanently because "I have a lot of fear of him." She said she feared physical abuse both against herself and her children. Even with the restraining order in place, he had continued to call her, text her, and threaten her. He had also mistreated their daughters. She explained Torres-Hernandez had hit their younger daughter on the chest causing bruising.

During Perez's testimony, the court initially advised her counsel that any testimony about the abuse towards their daughter was not relevant. The court stated the standard to renew or extend the order "has to do with whether she has a reasonable apprehension of future abuse. The abuse is as to her as opposed to the children."

3

Counsel argued it was relevant to Perez's reasonable apprehension of future abuse and she was seeking to modify the order to add the children as protected parties.

The court then allowed further testimony. Perez testified that Torres-Hernandez had hit their younger daughter once with a shoe, and hit her on another occasion causing a swollen lip. He had also grabbed the older daughter causing a red mark on her wrist. Perez stated: "He is a very aggressive person, and I, frankly, have a lot of fear for my own safety and that of my children." She said the fact he hit her children made her more afraid of him because he had broken the law.

She testified that she received a call from Torres-Hernandez in November 2012 and he threatened her, saying "Fuck you, bitch," and told her to stop going to court to ask for support and custody of their daughters. She said it made her "very fearful" because he was not supposed to call or text her. He also sent her a text after the call, from an anonymous number, but it made reference to the content of the prior call. She said the text made her feel "scared and helpless." He sent her texts on February 4, 2013, the date the criminal charges for hitting their younger daughter were dismissed. The first text stated: "Ha, ha, ha. Poor kids for having a crazy mom like you. Was it worth putting your kids through all that trouble and end up with nothing?" She received another anonymous text that said "the kids pay the consequences," and remarked that he was about to have the son he always wanted. Perez testified that text messages created "a lot of fear."

When she found out the criminal charges had been dismissed, she felt "[v]ery scared, very terrified, because now he feels that he can break the law."

Perez testified that she did not want him bothering her, calling her, or sending her messages because she was "very scared because he has been doing things that have affected me." She stated she was afraid Torres-Hernandez would cause her future physical harm if the order were not renewed. She said that she felt helpless "because in spite of the fact that there's a restraining order, he continues to do that and because the law hasn't been able to stop him. So I feel helpless and fearful at the same time."

4

The court asked Perez if she had been threatened since the restraining order had been issued, and she responded that his calls were threatening. She said that he told her "You're going pay for it." She was not sure "exactly what he can do, but I'm afraid."

Counsel sought to introduce the testimony of Perez's father, who had seen the bruising on the younger daughter, but the court excluded the testimony as "redundant."

Torres-Hernandez denied contacting Perez by phone or sending her text messages. He claimed Perez was making these claims in order to get a green card.

The court found "there is no basis to extend this order on a permanent basis. I find that there is insufficient evidence as to a reasonable belief of continued abuse. There is no evidence before the Court that there has been actual abuse within the time period that the restraining order has been issued." The court found that the abuse, if true, had been toward the children, but that was irrelevant as to the abuse alleged by Perez "because it does not speak to any abuse that Ms. Perez has been subjected to." Perez has been subjected to "annoying phone calls. I wouldn't let it rise to the level of a pattern of harassment, but the phone calls are intended to annoy her."

The court stated it did not find Torres-Hernandez's testimony to be "particularly persuasive," and "there may be some credibility issues." The court found that Torres-Hernandez made the phone calls and sent the text messages in violation of the restraining order, but that this was not enough to extend the DVRO.

The court stated: "Abuse is not merely simply annoying or harassing—occasional harassing phone calls intended to annoy the other person. Abuse is not exerting your rights under the law to say, you know 'If you keep going to court, you may lose out. The kids may—they're tired of putting up with a crazy mother.' " Stating an opinion does not rise to the level of a threat of violence or actual infliction of violence. Abuse must be "violence or the infliction of violence on an individual." Therefore, there was insufficient evidence of a reasonable belief of continued abuse to support extension of the order.

5

Since at the time of the hearing the DVRO was set to expire in a few days, and given the court's denial of the requested renewal, it did not consider the request that the order be modified to include the children as protected parties.

## III.

## DISCUSSION

The purpose of the Domestic Violence Prevention Act (DVPA) is "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code,[1] § 6220.) Under the DVPA, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury; sexual assault; placing a person in reasonable apprehension of imminent serious bodily injury to that person or another; or engaging in behavior that could be enjoined pursuant to section 6320. (§ 6203.) Section 6320 includes "molesting, attacking, striking, stalking, threatening, sexually assaulting, [and] battering . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party. . . ." (§ 6320, subd. (a).)

Section 6345, subdivision (a) provides: "In the discretion of the court, the personal conduct, stay-away, and residence exclusion orders contained in a court order issued after notice and a hearing under this article may have a duration of not more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. These orders may be renewed, upon the request of a party, either for five years or permanently, *without a showing of any further abuse* since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party." (Italics added.)

---

[1] All further references are to the Family Code unless otherwise identified.

6

**A.     *Standard of Review***

The appropriate standard of review was recently set forth by the Second District Court of Appeal in *Eneaji v. Ubboe*: "The trial court's ruling on a request to renew a [DVRO] is reviewed for an abuse of discretion.  [Citation.]  An abuse of discretion occurs when the ruling exceeds the bounds of reason.  [Citation.]  But, the exercise of discretion is not unfettered in such cases.  [Citation.]  'All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred.  [Citations.]  If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.  [Citation.]  Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.  [Citation.]'  [Citation.]  The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation]."  (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*).)

In reviewing the denial of a DVRO request, we determine whether the trial court " 'applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court.'. . ."  (*Gou v. Xiao* (2014) 228 Cal.App.4th 812, 817 (*Gou*), quoting *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420–421.)

**B.     *Renewal of a DVRO Does Not Require Proof of Abuse During the Time Period Since the Restraining Order Was Issued***

Section 6345 "makes it unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect.  It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order.  If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order."  (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1284 (*Ritchie*).)

7

"A trial court is vested with discretion to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

Here, after the contested hearing, the court stated: "There is no evidence before the Court that there has been actual abuse within the time period that the restraining order has been issued." But, as set forth above, renewal does not require "a showing of any further abuse since the issuance of the original order" (§ 6345, subd. (a)), for the order to be renewed. (*Eneaji*, *supra*, 229 Cal.App.4th at p. 1464 ["the trial court erred in concluding that the denial was appropriate because nothing happened in the three years since the restraining order"].) The key consideration for the court is not the type or timing of abuse, but whether the protected party has a reasonable fear of future abuse. "A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.)

Perez testified that Torres-Hernandez's post-order telephone calls and text messages made her feel "scared and helpless," particularly in light of the course of misconduct that led to the original restraining order. She said that the restraining order had not stopped him so she felt fearful and helpless. She described Torres-Hernandez as an aggressive person capable of violence, and testified that she feared for her own safety and the safety of her children.

Perez's testimony established a reasonable apprehension of future abuse. Torres-Hernandez had continued to contact and threaten her even with the DVRO in place. While he did not physically abuse Perez after the order was issued, he had physically abused their children and Perez's son. As detailed below, this abuse was relevant to the continuance of the order.

Here the court's decision was guided by a misunderstanding of the applicable legal principles so it could not properly exercise its discretion, and we must reverse. (*Eneaji*, *supra*, 229 Cal.App.4th at p. 1463 [the trial court's exercise of discretion must be "guided

8

by applicable legal principles" derived from the statute under which that discretion is conferred].)

### C. *The Court Erroneously Found that Torres-Hernandez's Violations of the DVRO Were Not Abuse Under the Statute*

Not only did the court err by requiring a showing of ongoing harassment to extend the order, but the court also concluded there must be a showing of post-order abuse constituting "violence or the infliction of violence on an individual." The court incorrectly concluded that the evidence must show "violence or an actual infliction of violence" in order to renew the DVRO order.

To the contrary, the definition of abuse under the DVPA is much broader. Annoying and harassing an individual is protected in the same way as physical abuse. "Because of an amendment in 1998, protective orders can be issued because of persistent unwanted phone calls or letters—which fall into the same category as 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, [or] harassing' the protected party. That pattern of unwanted phone calls or letters may support the same set of prohibitions in the initial protective order as one predicated on a series of violent beatings." (*Ritchie*, *supra*, 115 Cal.App.4th at pp. 1290-1291, fn. omitted.)

There can be little doubt that Torres-Hernandez's phone calls and texts constitute continuing abuse under the statute. (See §§ 6203, 6320 [defining abuse to include making annoying phone calls].) The phone calls and texts harassed Perez and disturbed her peace of mind. (See *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [unannounced and uninvited visit and repeated contacts by phone, e-mail, and text, despite requests of no contact, " 'disturb[ed] the peace' " and constituted " 'abuse' " within the meaning of § 6320]; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1425 [wife did not have to prove physical abuse to obtain a restraining order where husband accessed and disclosed the contents of her text messages and e-mails, disturbing her peace of mind].) Even after the DVRO was amended to prohibit Torres-Hernandez from calling, e-mailing, or texting Perez, he contacted her by phone and text message. He threatened her by saying "[f]uck you bitch" and telling her to stop

9

seeking child support.  He told her she was a "crazy mom" for putting her kids through the "trouble" of reporting him for child abuse.  He told her she was "going to pay for it" and that children "pay the consequences."

While the trial court found that Perez had been subjected to "annoying phone calls," they did not "rise to the level of a pattern of harassment."  Instead, the court found that "[a]buse is not merely simply annoying or harassing—occasional harassing phone calls intended to annoy the other person."  This finding is incorrect under the DVPA.

In *Lister v. Bowen*, Division Two of this court found that a party's knowing violation of an existing restraining order supported the court's renewal of the order.  (*Lister v. Bowen* (2013) 215 Cal.App.4th 319 (*Lister*).)  Lister had obtained a restraining order against Bowen that required him to stay 100 yards away from her and her workplace.  (*Id.* at p. 322.)  Lister sought to renew the order and presented evidence that Bowen had been to her workplace, although she was not present when he was there.  (*Id.* at p. 324.)  "It almost goes without saying that any violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order."  (*Id.* at p. 335.)  It is reasonable for the court to conclude that a knowing violation of the restraining order made Lister, the protected party, feel apprehensive about her safety.  (*Ibid.*)  "The court was within its discretion to conclude that the evidence together indicated it was more probable than not there was a sufficient risk of future abuse to find that Lister's apprehension was genuine and reasonable. [Citation.]"  (*Ibid.*)

Like the restrained party in *Lister*, Torres-Hernandez violated the expiring restraining order.  He made phone calls and sent texts to Perez.  Torres-Hernandez argues, without any citation to authority, that the statute requires Perez to prove he had the intent to annoy or harass her.  The DVPA focuses on the protected party requiring only that the protected party has a reasonable apprehension of future abuse.  (*Ritchie*, *supra*, 115 Cal.App.4th p. 1290.)  These phone calls and texts made Perez feel apprehensive about her safety.  Perez specifically stated that the fact Torres-Hernandez

10

violated the order made her feel "scared and helpless."  She felt that the law had not been able to stop him and it made her fearful all the time.[2]

Therefore, the court erred both in finding that there had to be evidence of some "abuse" occurring since the issuance of the order, and that the abuse had to be physical violence in order to create a reasonable apprehension of future abuse.

### D.  *The Court Improperly Concluded that Evidence of Abuse of the Couple's Children Was Irrelevant*

The court also found that any abuse by Torres-Hernandez towards the couple's children was irrelevant "because it does not speak to any abuse that Ms. Perez has been subjected to."  We conclude the court also should have considered the abuse of Perez and Torres-Hernandez's daughters and Perez's son in determining whether to renew the order.

Under the DVPA, abuse is not limited to the protected party seeking the order. The definition of abuse includes placing "a person in reasonable apprehension of imminent serious bodily injury to that person or *to another*."  (§ 6203, subd. (a)(3), italics added.)

Division Three of this court recently held that child abuse, with no abuse of the protected party, can support the issuance of a DVRO.  (*Gou*, *supra*, 228 Cal.App.4th at pp. 817-818.)  In *Gou*, the mother witnessed extensive abuse of her son over a period of time, resulting in a charge of child abuse against the father.  The trial court found that where there were no allegations of abuse against the mother, the abuse against the child was not sufficient to support a DVRO because the mother was not the victim of domestic violence.  (*Id.* at p. 816.)  Division Three reversed, holding the factual allegations "would support a finding that [the] respondent's past behavior was abusive as it had placed [the] appellant in reasonable apprehension of imminent serious bodily injury to herself or the

---

[2] If intent were relevant to the issue of abuse under the DVPA, here the evidence established that Torres-Hernandez meant to be harassing and threatening, including telling Perez she was "going to pay" for what she had done.  Indeed, the court found that the "phone calls [were] intended to annoy her."

11

child, and disturbed [the] appellant's peace by causing the destruction of her mental or emotional calm." (*Id.* at p. 818.) The trial court erred in denying the DVRO request on the sole ground that appellant had failed to demonstrate she was the victim of domestic violence under the DVPA. (*Id*. at p. 818.)

Here, Perez presented evidence that since the DVRO was issued, while she had not been physically abused by Torres-Hernandez, he had abused their children. He had hit their younger daughter, causing bruising on her chest in one incident and a swollen lip in another incident. Perez testified that the fact Torres-Hernandez hit the children made her more afraid of him because he had broken the law. There was also evidence that Torres-Hernandez taunted Perez by sending her texts after the child abuse charges against him were dismissed, telling her that "children pay the consequences," which caused Perez "a lot of fear."

Section 6320 describes enjoinable behavior as including "disturbing the peace of the other party. . . ." (§ 6320, subd. (a).) " '[D]isturbing the peace of the other party' " means "conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) The abuse of their children destroyed Perez's emotional calm and made her fear for her safety and the safety of her children. This is evidence the court should have considered under the statute in ruling on the renewal of the DVRO. (See *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 822 [the court must consider evidence of acts of emotional abuse that destroys a person's "mental and emotional calm" as the basis for a DVPA order].)

The evidence that Perez presented at the hearing about Torres-Hernandez's abuse of the children was also relevant to her request to modify the DVRO to include the children as protected parties. On remand, the court must consider whether the renewed order should be modified to include the children as protected parties.

## IV.

## DISPOSITION

The court's order denying Perez's request for renewal of the DVRO is reversed. The trial court is hereby ordered to hold a new hearing to determine whether the DVRO

12

should be extended for five years or permanently (§ 6345, subd. (a)), and whether the order should be modified to include Perez's three children.


 

_____
RUVOLO, P. J.


I concur:


_____
REARDON, J.

Concurring opinion of Streeter, J.

I concur fully in the majority opinion and write to emphasize an aspect of the trial court's ruling, reversed by us today, that I find especially troubling.

For reasons that escape me, the court found Ms. De La Luz Perez's proffer of evidence of child abuse to be "irrelevant to the abuse alleged by Ms. Perez because it does not speak to any abuse that Ms. Perez has been subjected to."

The Family Code authorizes either party to seek modification of a restraining order and sanctions the protection of other family members upon a showing of "good cause." (Fam. Code, §§ 6320, subd. (a), 6345, subd. (a).)[1] Evidence that Mr. Torres-Hernandez had physically abused the children is plainly relevant to the question of whether "good cause" exists to support modification of a restraining order to protect them. The trial court's failure to address this issue cannot be reconciled with the provisions of the DVPA and its purpose of protecting against "acts of domestic violence, abuse, and sexual abuse . . . ." (See Fam. Code, § 6220.) Indeed, the DVPA expressly states that the court "shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (Fam. Code, § 6340.)

The Legislature's sensitivity to this issue is not surprising, as counsel for Ms. De La Luz Perez has pointed out, given the abundance of social science studies showing a direct correlation between abuse against a parent and abuse against the children of that parent. (See Edleson, *The Overlap Between Child Maltreatment and Woman Abuse* (1997) (rev. April 1999) National Electronic Network on Violence Against Women <http://www.bvsde.paho.org/bvsacd/cd67/AR_overlap.pdf > [as of June 9, 2016], pp. 2–3; *see also* Meisner & Korn, *Protecting Children of Domestic Violence Victims with*

---

[1] (*See also* Code Civ. Proc., § 533 [authorizing modification of injunctions and temporary restraining orders upon a showing that the "ends of justice would be served" by such a modification].)

1

*Criminal No-Contact Orders* (April 2011) AEquitas: The Prosecutor's Resource on Violence Against Women, STRATEGIES Newsletter <http://www.aequitasresource.org/Protecting-Children-of-Domestic-Violence-Victims-with-Criminal-No-Contact-Orders.pdf> [as of June 9, 2016], p. 1; Hart & Klein, *Practical Implications of Current Intimate Partner Violence Research for Victim Advocates and Service Providers* (2013) National Criminal Justice Reference Service <https://www.ncjrs.gov/pdffiles1/nij/grants/244348.pdf> [as of June 9, 2016], p. 64 ("*Practical Implications*") [citing over 30 studies showing 41% median co-occurrence of child maltreatment and adult domestic violence].)

Within this body of social science literature, most of the studies show that in 30-60 percent of families where either child abuse or spousal abuse exists, *both* forms of the abuse exist (see Hart & Klein, *Practical Implications, supra,* at pp. 64–65), a phenomenon no doubt reflective of the sad reality that some batterers abuse children as a way to inflict pain on the abused spouse. There is also a documented link in the severity of spousal and related child abuse. A number of the studies show that the more severe the spousal abuse, the more severely the battered spouse's child is likely to be abused. (E.g., Edleson, *The Overlap Between Child Maltreatment and Woman Abuse*, *supra*, at p. 4.) The overlap between children witnessing domestic violence and being abused themselves has been widely documented as well. (*Ibid.*)

On this record, there is plenty of evidence that, in her own right, Ms. De La Luz Perez deserves further consideration of her request for renewal of the original restraining order. But when that issue is taken up, the interests of the children and whether they ought to be made protected parties by modification of the restraining order must be carefully considered. And to evaluate both of Ms. De La Luz Perez's requests for relief—for renewal and for modification—it is important to recognize that the interests of the children are, as a practical matter, bound up with the interests of their mother under the relevant statutory standard.

I concur:

_____
STREETER, J.

Filed 7/11/16

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARIA DE LA LUZ PEREZ,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>JOB FRANCISCO TORRES-<br>HERNANDEZ,<br><br>     Defendant and Respondent. | A139710<br><br>(Alameda County<br>Super. Ct. No. HF10499992) |

BY THE COURT:

Upon due consideration of appellant's request for publication of this court's June 9, 2016 opinion, and respondent's opposition to the request, the request is granted.

The Reporter of Decisions is directed to publish said opinion in the Official Reports.

(Ruvolo, P. J., Reardon, J., and Streeter, J. joined in the decision.)

Date:_____     _____P.J.

1

Trial Court:                      Alameda County Superior Court

Trial Judge:                      Hon. Boydine A. Hall

Counsel for Appellant:            Bay Area Legal Aid, Brenda Star Adams

                                  Family Violence Appellate Project, Nancy K.D.
                                  Lemon, Jennafer Dorfman Wagner, Shuray
                                  Ghorishi

                                  Folger Levin, Andrew J. Davis, Rosha Jones

Counsel for Respondent:           Law Offices of Sanjay Bhardwaj and
                                  Sanjay Bhardwaj

A139710, *De La Luz Perez v. Torres-Hernandez*