Filed 12/10/21; Certified for Publication 1/3/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of BETSEY BRUBAKER and ANDY STRUM. | B307887 |
| | (Los Angeles County Super. Ct. No. 17STFL05662) |
| BETSEY BRUBAKER, Appellant, v. ANDY STRUM, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael R. Powell. Reversed with directions.

Fernandez & Karney and Mark H. Karney for Appellant.

Feinberg Mindel Brandt & Klein, Gregory A. Girvan and Collette Torunyan for Respondent.

# INTRODUCTION

Betsey Brubaker appeals from an order denying her request to renew a restraining order against her former husband, Andy Strum, under the Domestic Violence Prevention Act (the Act) (Fam. Code, § 6200 et seq.).[1] Because the trial court erroneously considered only whether Strum committed acts of domestic violence during a narrow window of time when the original restraining order was in effect, and not whether Brubaker had a reasonable fear of future abuse in light of all relevant facts and circumstances, we reverse the order denying the request to renew the restraining order and direct the trial court to hold a new hearing on the request and allow Brubaker to introduce the evidence the court erroneously excluded.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Brubaker Obtains a Domestic Violence Restraining Order Against Strum*

Brubaker and Strum married in 2009 and had twins in 2015. On October 6, 2017 Brubaker filed a petition for dissolution of the marriage, which, according to Brubaker, Strum opposed.

On October 13, 2017 Brubaker filed a request for a domestic violence restraining order against Strum. Brubaker alleged Strum threatened to strangle and kill her, stalked her, and told her he would make her life "a living hell" if she continued to pursue a divorce. Brubaker alleged that in 2014,

---

[1] Statutory references are to the Family Code.

2

after Brubaker failed to quickly find their destination in a smart phone application, Strum left her on the side of the road, forcing her to walk 20 miles home. Brubaker alleged that in April 2017 Strum, with the children in the car, drove erratically and threatened to hit a group of cyclists he felt was slowing traffic. Brubaker alleged Strum threatened violence against her several other times but did not follow through on his threats.

On November 3, 2017 Brubaker and Strum entered into a stipulated temporary protective order. The order required Strum to remain 100 yards from Brubaker (except during school events, extracurricular activities, and when exchanging the children for visitation), prevented Strum from contacting Brubaker except in connection with custody and visitation matters, and established a temporary custody schedule for the children.

On January 25, 2018 Brubaker filed another request for a domestic violence restraining order, alleging Strum violated the stipulated protective order on multiple occasions and committed additional acts of abuse. Brubaker alleged Strum stalked her, monitored her actions using a "nanny cam," threatened to report her to child protective services, and harassed her verbally and in written communications. Brubaker again alleged Strum said he wanted to strangle and kill her. Brubaker claimed Strum's behavior was "triggered by anger regarding the normal divorce proceedings, which he was against and uses to lash out . . . ."

Following a hearing on February 22, 2018, the family law court (Judge Hank M. Goldberg) issued a two-year domestic violence restraining order against Strum. The court found that Strum placed Brubaker "in reasonable apprehension of imminent or serious bodily injury" by threatening violence against her and that Strum had violated the stipulated protective order. The

3

court also found Strum's violations of the stipulated protective order amounted to "disturbing the peace" under the Act and showed, through "conduct and in words," that Strum would "do whatever [he] want[ed] to do," regardless of whether there was a restraining order in effect. The court found Strum had "a very significant anger management issue" and an "explosive temper." The court described the abuse as "situational" and stated a two-year order would give the parties sufficient time to "finish the divorce case" with the restraining order in place.

The domestic violence restraining order prevented Strum from coming within 100 yards of Brubaker, her home, or her vehicle, and from contacting Brubaker directly or indirectly. The court made an exception for "brief and peaceful contact" required to facilitate Strum's court-ordered visitation with the children and ordered the parties to communicate using Our Family Wizard (OFW), an online platform designed to facilitate communications for co-parenting. The court also granted Brubaker sole physical and legal custody of the children.

B. *Brubaker Alleges Strum Violated the Domestic Violence Restraining Order, and the Family Law Court Issues a Final Statement of Decision in the Divorce Proceeding*

On May 22, 2018 Brubaker asked for an order limiting Strum's use of OFW. The family law court (Commissioner Doreen Boxer) found Strum had violated the domestic violence restraining order by using OFW to "scold, admonish, [and] reprimand" Brubaker and by "using the children as a pretext to further harass" her. The court modified the restraining order by limiting the scope of permitted OFW communications.

4

On July 23, 2019 the family law court (Judge Lawrence Riff) entered a final statement of decision in the dissolution action, ruling the court would award Brubaker sole physical and legal custody of the children. The court stated a "principal issue for trial" was whether Strum rebutted the presumption under section 3044 that "'an award of sole or joint custody to a perpetrator of domestic violence "is detrimental to the best interest of the child."'" (See § 3044, subd. (a).) The court found Strum had not carried his burden to rebut the presumption because Brubaker was "and still is damaged on account of [Strum's] abuse" and because Strum's "inability to control his explosive temper and aggressive behavior, with [Brubaker] as a target, has . . . been in the past detrimental to the children." The court also found that Strum "continue[d] palpably to radiate anger and agitation . . . during the Court proceedings," and that, "in a less structured environment," Strum's issues with anger management "are likely to be more pronounced."

The family law court also ruled that, even if Strum had rebutted the presumption under section 3044, the court would not grant Strum physical or legal custody of the children because there was "no prospect" of Strum and Brubaker co-parenting effectively. The court found giving Strum joint custody "would require him and [Brubaker] to interact with a high likelihood . . . of [Brubaker] being further abused." The court found, however, Strum had "complied with the terms of the permanent restraining order" and had "not committed any further acts of domestic violence since that order was issued." The court did not address Commissioner Boxer's finding Strum had violated the terms of the restraining order, but the court did relax the restrictions Commissioner Boxer had imposed on Strum's use of

5

OFW.  The court entered a judgment of dissolution on
November 8, 2019.

C. *Brubaker Files a Request To Renew the Domestic*
*Violence Restraining Order*

Meanwhile, on October 1, 2019 Brubaker filed a request to
renew the two-year domestic violence restraining order, which
otherwise would expire on February 22, 2020.[2]  Brubaker alleged
she had a reasonable apprehension of future abuse based on
Strum's past abuse and his violations of the existing restraining
order.  Specifically, Brubaker alleged Strum continued to use
OFW to harass her, manipulated volunteer opportunities at the
children's school so he could be within 100 yards of her, and
insisted on exchanging the children at each other's front door
instead of at the street curb or driveway, which Brubaker claimed
gave Strum the opportunity to "attack [her] unprovoked with
accusations [and] assertions in a highly charged verbal manner
in the clear view of [the] children."  Brubaker also alleged Strum
"hurl[ed] accusations at [her] in an unreasonably loud and
aggressive tone" during an exchange of the children on
August 30, 2019.

Strum opposed the request to renew the restraining order
and filed two motions in limine.  One motion sought to exclude
the OFW messages exchanged between the parties prior to

---

[2]     Section 6345, subdivision (a), provides that a "request for
renewal may be brought at any time within the three months
before the expiration of the orders."  Brubaker appears to have
filed her request to renew prematurely, but Strum did not object
to renewal on that basis.

May 24, 2018.  Strum claimed that, prior to that date, counsel for Brubaker "wantonly violated the rules of professional conduct" by communicating directly with Strum through OFW without Strum's knowledge.  Brubaker stipulated to the relief requested in Strum's first motion in limine.

Strum's second motion in limine sought to exclude Brubaker from "proffering any evidence regarding any allegations of abuse or violations of the Domestic Violence Restraining Order by [Strum] prior to February 13, 2019," which was the last date the parties presented evidence in the marriage dissolution trial.  Strum argued that, because Judge Riff found Strum had not committed any acts of domestic violence or abuse since Judge Goldberg issued the restraining order in February 22, 2018, the doctrines of issue preclusion and estoppel precluded the trial court in this proceeding (Judge Michael R. Powell) from considering that evidence or any other evidence of domestic violence or abuse occurring before the dissolution trial.  Strum also asked the trial court to take judicial notice of the family law court's final statement of decision because "the matter of violations of the protective order since its issuance . . . through the last day of trial . . . has already been adjudicated."  Strum's motion in limine did not mention Commissioner Boxer's earlier finding Strum violated the restraining order.

D.      *The Trial Court Grants Strum's Second Motion in Limine and Denies Brubaker's Request To Renew the Restraining Order*

The trial court considered Strum's second motion in limine at the beginning of the July 10, 2020 hearing on Brubaker's request to renew the restraining order.  Counsel for Brubaker

7

argued issue preclusion did not apply because some of the issues relevant to Brubaker's request to renew the restraining order were not presented or addressed in the dissolution trial. But the trial court stated Strum made "a compelling case [for] issue preclusion . . . in the sense that [the] parties had an opportunity to present [evidence of violations of the restraining order] earlier during the hearing with Judge Riff. If it wasn't presented at that hearing, it's almost as if [Brubaker] had a basis for the restraining order, but [she] didn't include all of the information. And then [she] want[s] to go back in time and say . . . this happened too . . . ." The trial court concluded that Judge Riff made "an explicit finding" Strum had not violated the restraining order and that it was "inappropriate" to relitigate that finding. The court stated that the "question is now, what has occurred after [Judge Riff made his finding] that would warrant the continuation of the restraining order?"

The trial court also stated, "This is a renewal of the restraining order. This isn't a re-litigation of the past restraining order. . . . I went back and I made sure that I looked at the original restraining order request. And I looked at what Judge Goldberg had said. And I believe that Judge Goldberg had made the statement that he believe[d] . . . the granting of the domestic violence restraining order was to be for two years based on the fact that he felt once [the marriage dissolution] matter [was] adjudicated, that that's all that would be needed at that point. So if we have a restraining order that's a duration of two years, and . . . we don't see any violations within the two-year period, then the court is left with looking at what are the facts that exist . . . after this is all adjudicated . . . . This is in effect saying, 'What has happened since the restraining order has been

8

issued that warrants it continuing?" . . . If the events [that led to the issuance of the restraining order] have ceased, if the behavior is such that it does not rise to the level that there is prescribed in [the Act], I don't think that I have the authority to issue a restraining order."

The trial court concluded its discussion of the second motion in limine by stating: "The court wants to concentrate on any events that happened after [Judge Riff's] hearing and during the restraining order period. And I want to focus on that solely." As a result of the court's ruling, Brubaker did not present, and the court did not consider, evidence underlying the original restraining order or evidence Judge Riff considered in finding Strum had not violated the restraining order as of February 13, 2019.

On the merits of Brubaker's request the trial court questioned Brubaker about several occasions where she claimed Strum violated the terms of the restraining order. Brubaker said that in one incident Strum yelled at her through her car door "in front of the kids in a rage" about Brubaker being five minutes late to pick up the children. (Brubaker denied being late.) The court also asked Brubaker about her claim Strum harassed her through OFW messages on September 2, 2019. Brubaker testified that "this happens regularly," but that she did not remember any specifics of what happened on that date.

Brubaker testified that on one (unspecified) occasion Strum went to the window of her car, banged on it "very hard," and threatened her about "what ticked him off in that moment, something about court." Brubaker said she called the police, but she did not say whether officers arrived or what happened if and when they did. Brubaker testified that on another (again,

9

unspecified) occasion Strum "lunged" at her, but she did not give any details about the incident.  Brubaker said that on still another occasion Strum appeared at the children's school "for no reason," came within 100 yards of her, and gave her "sinister looks as a display of power."

The trial court said that it was presuming the incidents Brubaker identified occurred "within the timeframe" permitted by its ruling on the second motion in limine, but that Brubaker did not provide "any dates," "statements" or "context" to assist the court in determining whether Strum's conduct was abusive. Brubaker responded she had "countless OFWs" that provided those details, and counsel for Brubaker asked the court for a break to determine whether Brubaker had submitted the OFWs to the court.  After the break, counsel for Brubaker informed the court he had submitted copies of two prior orders to show cause re contempt based in part on allegedly abusive OFW messages. Over Strum's objection, the trial court agreed to review the OFW messages to determine whether they proved Strum violated the restraining order, even though Brubaker had stipulated to exclude messages exchanged before May 24, 2018.  Brubaker testified many of the messages "bullied" her in connection with decisions she made about school, insurance, and medical and dental issues.  Brubaker said Strum's messages were "relentless" and showed no respect for her decisions.

After another break (for the trial court to review the OFW messages and the orders to show cause), the court denied Brubaker's request to renew the restraining order.  The court stated that, to renew the restraining order, Brubaker had to show she "entertain[ed] a reasonable apprehension of future abuse without showing any further abuse since the issuance of the

original order," but reiterated that Judge Riff's statement of decision in the dissolution trial "gave a timeline as to conduct that was going to be examined" by the court (with the exception of some OFW messages) "in determining whether or not the restraining order should be granted on a permanent basis." The court found Brubaker's testimony "insufficient," "vague," "conclusory," and lacking a "time frame." The court acknowledged the incident where Strum banged on Brubaker's car window, but said an OFW message related to that incident showed the parties had "different viewpoints about what happened that day."[3] Regarding the OFW messages in general, the court stated: "The most that I could glean . . . was that potentially [Strum] was being patronizing. His choice of words and language in terms of characterizing [Brubaker's] behavior [was not] ideal," but it did not create a "reasonable apprehension" under the Act. The court found that, "based on the aggregate of what [Brubaker] presented to the court," her "concerns are not reasonable." The court denied her request to renew the restraining order, and Brubaker timely appealed.

## DISCUSSION

Brubaker argues the trial court erred in granting Strum's motion in limine based on issue preclusion and effectively requiring Brubaker to prove, contrary to the plain language of the Act, Strum violated the domestic violence restraining order after February 13, 2019. Brubaker also argues the court abused

---

[3]     Strum did not testify at the hearing.

its discretion in denying her request to renew the restraining order.  We agree with Brubaker's first argument.

A.    *Requests To Renew Domestic Violence Restraining Orders Under the Domestic Violence Prevention Act*

The Act is intended "'to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence.'"  (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 640-641; see § 6220.)  "Under the [Act], a court may issue a protective order "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse."'"  (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115; see *J.H.*, at p. 641 ["Courts may issue a restraining order to achieve [the Act's] purpose upon 'reasonable proof of a past act or acts of abuse.'"]; see also § 6300, subd. (a).)  Courts should broadly construe the Act to accomplish its purpose of preventing acts of domestic violence.  (*In re Marriage of F.M. & M.M.*, at p. 115; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.)

Section 6211 defines "domestic violence" as "abuse perpetrated against," among others, a spouse or former spouse.  (§ 6211, subd. (a).)  The Act defines "abuse" as "intentionally or recklessly causing or attempting to cause bodily injury, placing a person in reasonable apprehension of imminent serious bodily injury, or engaging in behavior that could be enjoined under section 6320," including "harassing" or "disturbing the peace of the other party."  (*In re Marriage of F.M. & M.M.*, *supra*,

65 Cal.App.5th at p. 115; see §§ 6203, 6320.)[4] The definition of "abuse" under the Act is generally broader than acts of physical abuse or threats of physical abuse. (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398 (*Perez*); see § 6203, subd. (b) ["[a]buse is not limited to the actual infliction of physical injury or assault"].) Rather, "[a]nnoying and harassing an individual is protected in the same way as physical abuse." (*Perez*, at p. 398; see *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290-1291 (*Ritchie*).)

Restraining orders issued under the Act "may have a duration of not more than five years, subject to termination or modification by further order of the court . . . ." (§ 6345, subd. (a).) A restraining order "may be renewed, upon the request of a party, either for five years or permanently, *without a showing of further abuse since the issuance of the original order*, subject to termination or modification by further order of the

---

[4] Section 6320, subdivision (a), authorizes the court to enjoin, among other conduct, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, [and] coming within a specified distance of, or disturbing the peace of the other party." (See *In re Marriage of F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 115.) The phrase "disturbing the peace of the other party" means "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (§ 6320, subd. (c).)

13

court either on written stipulation filed with the court or on the motion of a party." (*Ibid.*, italics added.)  As the court explained in *Ritchie, supra,* 115 Cal.App.4th 1275, "Section 6345 makes it unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect.  It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order.  If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order." (*Ritchie*, at p. 1284; accord *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509-510; *Perez, supra,* 1 Cal.App.5th at p. 397; see *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333 ["'the existence of the initial order certainly is relevant [to a request for renewal,] and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof'" to warrant renewal].)

Instead, a court should renew a domestic violence restraining order when the court "'find[s] the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a "reasonable apprehension" such abuse will occur unless the court issues a protective order.'" (*Lister v. Bowen, supra,* 215 Cal.App.4th at p. 332; see *Ritchie, supra,* 115 Cal.App.4th at p. 1288.)  "In challenging a renewal order, the restrained party is not permitted 'to challenge the truth of the evidence and findings underlying the initial order.'" (*Lister*, at p. 333; see *Ritchie*, at p. 1290.)

14

B.   *Issue Preclusion Did Not Apply*

       1.   *Applicable Law and Standard of Review*

"Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action.  [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824, italics omitted; accord, *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 686.)  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings*, at p. 825; see *Meridian Financial Services*, at p. 686.)

"[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511; see *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1330.)  "'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.'" (*Hernandez*, at pp. 511-512; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342; *Key v. Tyler* (2019) 34 Cal.App.5th 505, 534.)  "And the '"necessarily decided"' prong means only that 'the issue not have been "entirely unnecessary" to the judgment in the initial proceeding.'" (*Key*, at p. 534; see *Lucido*, at p. 342.)  "In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence,

the jury instructions, and any special jury findings or verdicts." (*Hernandez*, at p. 511; see *Ayala*, at pp. 1326-1327 ["'the pleadings and proof in each case must be carefully scrutinized to determine whether a particular issue was raised even though some legal theory, argument or "matter" relating to the issue was not expressly mentioned or asserted'"].)

If all four of the requirements are satisfied, the court must also determine whether applying issue preclusion would be consistent with the public policies underlying the doctrine. (*Meridian Financial Services, Inc. v. Phan*, *supra*, 67 Cal.App.5th at p. 686; *State Compensation Insurance Fund v. ReadyLink Healthcare, Inc.* (2020) 50 Cal.App.5th 422, 448.) "These policies include 'conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation.'" (*Meridian Financial Services*, at pp. 686-687; see *State Compensation Insurance Fund*, at p. 448.)

The party asserting issue preclusion has the burden of establishing the requirements to apply that doctrine. (*Howard Jarvis Taxpayers Assn. v. Weber* (2021) 67 Cal.App.5th 488, 499; see *Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 341; *State Compensation Insurance Fund v. ReadyLink Healthcare, Inc.*, *supra*, 50 Cal.App.5th at p. 448.) Whether to apply the doctrine of issue preclusion is a question of law that we review de novo. (*Thee Aguila, Inc. v. Century Law Group, LLP* (2019) 37 Cal.App.5th 22, 28; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

2.    *Issue Preclusion Did Not Apply To Prevent the*
      *Trial Court from Considering Evidence Strum*
      *Committed Acts of Domestic Violence Between*
      *February 2018 and February 2019*

In the dissolution action, the family law court considered whether Strum "committed further acts of domestic violence" in connection with the court's analysis of whether Strum rebutted the presumption under section 3044 that, as a perpetrator of domestic violence, awarding him sole or joint physical or legal custody of his children was detrimental to their best interest. (See § 3044, subds. (a), (b)(2)(F).)  Under section 3044, subdivision (b), a perpetrator of domestic violence can overcome the presumption that awarding the perpetrator sole or joint physical or legal custody of a child would be detrimental to the child's best interest by showing that (1) giving the perpetrator sole or joint custody is in the best interest of the child and (2) on balance, the factors listed in section 3044, subdivision (b)(2), support the finding that frequent and continuing contact with both parents will not jeopardize the child's health, safety, or welfare.  The factors the court must consider include whether "[t]he perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions," and whether "[t]he perpetrator of domestic violence has committed further acts of domestic violence."  (§ 3044, subds. (b)(2)(E), (F).)

The family law court found Strum had "complied with the terms of the permanent restraining order; and [Strum] has not committed any further acts of domestic violence since [the restraining order] was issued."  Based on this finding, Strum, in his motion in limine for the hearing on Brubaker's motion to

17

renew the restraining order, argued that any alleged abuse during the time period February 22, 2018 to February 13, 2019 had already been adjudicated and that Brubaker "should be estopped from presenting any further evidence at the hearing for [her] renewal of the protective order."

The trial court erred in finding issue preclusion barred Brubaker from presenting evidence of Strum's alleged abuse from February 2018 to February 2019 because the issue addressed by the trial court on Brubaker's request to renew the restraining order was not an issue the parties litigated and the family law court necessarily decided in the marriage dissolution trial. (See *DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 825; *Meridian Financial Services, Inc. v. Phan*, *supra*, 67 Cal.App.5th at p. 686.) The issue the family law court heard in February 2019 and decided in July 2019 was whether Strum rebutted the presumption under section 3044 that giving him sole or joint custody of the children was detrimental to their best interest. The issue the trial court heard and decided in July 2020 in ruling on Brubaker's request to renew the restraining order was whether Brubaker had a reasonable fear of future abuse. Those issues were very different. (See *Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 342; *Key v. Tyler*, *supra*, 34 Cal.App.5th at p. 534.)

And while evidence of additional acts of domestic violence or a violation of the original restraining order was relevant to whether Brubaker had a reasonable fear of future abuse (see *Lister v. Bowen*, *supra*, 215 Cal.App.4th at p. 335), such evidence was not required to renew the restraining order. (See *Ashby v. Ashby*, *supra*, 68 Cal.App.5th at pp. 515-516 ["a party's violation of [a domestic violence restraining order] can support a finding of reasonable apprehension," but "the reverse is not true":

18

compliance with a domestic violence restraining order does not "preclude[ ] a finding of reasonable apprehension"]; *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 306-307 [issue preclusion does not apply where a finding from an earlier action is relevant to "but does not resolve the inquiry" in the later action]; *Johnson v. GlaxoSmithKline, Inc.*, *supra*, 166 Cal.App.4th at p. 1513 ["'where the previous decision rests on a "different factual and legal foundation" than the issue sought to be adjudicated in the case at bar, [issue preclusion] should be denied"].) Even if Strum's conduct between February 2018 and February 2019 did not constitute domestic violence or violate the terms of the restraining order, it could have contributed to a reasonable fear of future abuse. (See *Ashby v. Ashby*, *supra*, 68 Cal.App.5th at p. 516 [conduct that does not violate the original restraining order may still contribute to the protected person's fear of future abuse].) Thus, issue preclusion did not apply, and the trial court erred in granting Strum's second motion in limine and excluding evidence of Strum's conduct between February 22, 2018 and February 13, 2019.

C. *The Trial Court Erred in Excluding Evidence Underlying the Original Restraining Order*

The trial court compounded its error in granting Strum's second motion in limine by also excluding evidence underlying the original restraining order (even though Strum did not request that relief).[5] Brubaker argues the trial court erred "in holding

---

[5] We review a trial court's rulings on the admissibility of evidence for abuse of discretion. (*Pilliod v. Monsanto Co.* (2021)

19

that the party seeking renewal must show that abuse occurred while the original restraining order was in place." That characterization of the trial court's ruling is not quite correct. The trial court acknowledged the legal standard for renewal was a reasonable apprehension of future abuse, but the court precluded Brubaker from demonstrating that fear through evidence of Strum's conduct prior to the original restraining order. Brubaker is correct, however, that the trial court erred.

The trial court suggested it would exclude the evidence that led to the original restraining order because Judge Goldberg believed at the time he issued that order that two years was sufficient to protect Brubaker throughout the divorce proceedings. But neither the fact Judge Goldberg issued the original restraining order for two years nor his reason for doing so made the evidence underlying the original restraining order irrelevant to Brubaker's request to renew that order. Section 6345 does not require "'a showing of any further abuse since the issuance of the original order'" to warrant renewal. (*Perez, supra,* 1 Cal.App.5th at p. 397; see *Ashby v. Ashby, supra,* 68 Cal.App.5th at pp. 509-510; *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1464.) Indeed, the most important consideration in determining whether to grant a request to renew a domestic violence restraining order "is not the type or timing of abuse, but whether the protected party has a reasonable fear of future abuse." (*Perez*, at p. 397; see *ibid.* [reversing an order denying a request to renew a domestic violence restraining order where the trial court considered only whether there was "'actual

67 Cal.App.5th 591, 630; *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.)

20

abuse within the time period that the restraining order has been issued'"]; *Eneaji,* at p. 1464 [reversing an order denying a request to renew a domestic violence restraining order where the trial court found "nothing happened in the three years since the restraining order"].)

The trial court wrongly believed it could not consider the evidence underlying the original restraining order. By excluding relevant evidence of Brubaker's fear of future abuse, the court abused its discretion by limiting Brubaker's ability to meet her burden of proof. (See *Perez*, *supra*, 1 Cal.App.5th at p. 396 ["""If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.""""]; *Eneaji v. Ubboe, supra*, 229 Cal.App.4th at p. 1465 [a decision "predicated on an erroneous understanding of the applicable law . . . must be reversed and remanded"].)

Following the trial court's lead, Strum argues the "'pattern of situational abuse'" that justified limiting the original restraining order to two years supports an exception to the general rule that a protected party need not present evidence of additional abuse to renew a domestic violence restraining order. But the Act does not include any such exception, and we decline Strum's invitation to read one into it. (See *Mora v. Webcor Construction, L.P.* (2018) 20 Cal.App.5th 211, 223 [a court should not rewrite statutes or read into them an exception that will materially affect their operation to make the statutes conform to a presumed intention not expressed or otherwise apparent in the statutory language]; *Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 393 [same].)

21

Strum also argues the trial court did consider "the underlying abuse that gave rise to the restraining order." He contends the trial court "'went back and . . . made sure that [it] looked at the original restraining order request'" and reviewed Judge Goldberg's reasons for granting the two-year restraining order. The trial court, however, considered the original request for a restraining order and Judge Goldberg's reasoning in the context of granting Strum's motion in limine, not in considering the merits of Brubaker's request to renew the restraining order. Moreover, Judge Goldberg's reasons for limiting the original restraining order to two years did not preclude Brubaker from showing she continued to have a reasonable fear of future abuse after the restraining order was due to expire. (See *Ritchie*, *supra*, 115 Cal.App.4th at p. 1290 ["the trial judge ordinarily should consider the evidence and findings on which th[e] initial order was based in appraising the risk of future abuse should the existing order expire"].)

## DISPOSITION

The order is reversed with directions for the trial court to hold a new hearing on Brubaker's request to renew the protective order and to allow Brubaker to introduce all relevant evidence in support of her request. Brubaker is to recover her costs on appeal.


SEGAL, Acting P. J.



We concur:



FEUER, J.



IBARRA, J.*

---

\*      Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of BETSEY BRUBAKER and ANDY STRUM. | B307887 |
| | (Los Angeles County Super. Ct. No. 17STFL05662) |
| BETSEY BRUBAKER, | |
| Appellant, | **ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT]** |
| v. | |
| ANDY STRUM, | |
| Respondent. | |

THE COURT:

The opinion in this case filed December 10, 2021 was not certified for publication. Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the nonparty's request for publication under California Rules of Court, rule 8.1120(a), is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

SEGAL, Acting P. J.          FEUER, J.          IBARRA, J.*

---

*     Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2