Filed 9/28/23  Marriage of Jennifer A. and Jason C. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of JENNIFER and JASON C. | |
| JENNIFER A., Respondent, v. JASON C., Appellant. | A165375 (San Mateo County Super. Ct. No. FAM0116981) |

In January 2022, the trial court granted the request of respondent Jennifer A. to permanently renew a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.) against appellant Jason C.[1]  Appellant contends that insufficient evidence supported renewal of the DVRO under the standard set out in *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*), and that the court erroneously excluded evidence.  We affirm.

---

[1]     To protect the privacy of the parties and witnesses, when referred to by name, we will refer to them either by their first name and last initials, or just initials.  (Cal. Rules of Court, rule 8.90(b)(1), (10), (11).)  The record refers to respondent Jennifer C. as Jennifer "A." and indicates C. is her former name. We will refer to her by her current surname, "A."

1

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellant and Jennifer A. were previously married and have two children together. In this family law matter (San Mateo County Superior Court case no. FAM0116981), the trial court issued a DVRO against appellant in November 2012, protecting Jennifer A., the children, and Jennifer A.'s parents. The record indicates the initial DVRO stemmed from an incident where appellant rushed Jennifer A. (who was his wife at the time), knocked her to the floor, then stepped on her to get into an R.V. to see

---

[2] Jennifer A. filed a motion to augment the record with: (1) appellant's notice of motion and motion for a new trial filed on February 4, 2022; (2) Jennifer A.'s memorandum of points and authorities opposing the motion for new trial filed on April 21, 2022; (3) the reporter's transcript of the May 9, 2022 hearing on the motion for new trial; and (4) the reporter's transcript of the November 28, 2012 hearing granting the initial DVRO. Appellant does not oppose augmenting the record with the reporter's transcript of the May 9, 2022 hearing, but he opposes augmenting the record with the remaining documents on two grounds: (1) the request is untimely pursuant to Local Rule 4(c); and (2) the documents are not necessary to determination of the appeal.

Local Rule 4(c) provides that a respondent should file a motion to augment "within 30 days of the filing of appellant's opening brief. Thereafter, motions to augment will be considered only upon a showing of good cause." Although the instant motion was filed beyond the foregoing 30-day limit, Jennifer A. sets forth good cause for augmentation. Namely, the proffered documents assist in the full and fair review of this matter by providing additional context to the proceedings surrounding the renewed DVRO. For example, the motion to augment would provide the entire reporter's transcript of the November 28, 2012 hearing granting the initial DVRO. (See, e.g., *Ritchie, supra*, 115 Cal.App.4th at p. 1291 ["the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof" to support renewal of a restraining order].) Appellant does not show any prejudice would result from the augmentation. The motion to augment the record is hereby granted.

his children, despite a court order to stay away from his children. Jennifer A.'s parents were added to the initial DVRO at Jennifer A.'s request.

In 2013, in a separate misdemeanor matter (Santa Clara Superior Court case no. B1262610) based on the same incident that led to the DVRO, appellant was convicted of an act of domestic violence.[3] The court issued a separate domestic violence criminal protective order protecting Jennifer A., which expired in August 2023.

In 2015, in this family law matter, the trial court renewed the DVRO for five years to January 2020. The children and Jennifer A.'s parents were included as protected parties.

In January 2020, Jennifer A. filed a request to permanently renew the DVRO. Accompanying the request were declarations from Jennifer A., her parents, and her eldest child. Appellant opposed the request. After holding a hearing and considering testimony from Jennifer A., one of Jennifer A. and appellant's sons, appellant, and appellant's parents, the trial court granted Jennifer A.'s request for a permanent DVRO protecting her and her parents. As relevant here, the DVRO prohibits appellant from contacting or disturbing them and requires that he stay 100 yards from them, their homes, and workplaces. The children, who are now adults, are not included as protected parties.

Thereafter appellant filed a motion for a new trial. Among other things, he argued the trial court misapplied the standard for renewing a DVRO set out in *Ritchie*, and he requested that new material witnesses to the 2012 incident be allowed to testify. At a May 9, 2022 hearing, the court

---

[3] The record is unclear what crime exactly appellant was convicted of. Appellant asserts he was charged with battery, while Jennifer A. says the conviction was for assault.

3

indicated that appellant failed to set forth any grounds for a new trial. More specifically, the court indicated its judgment was consistent with *Ritchie*, and appellant failed to show the court erred in excluding evidence. Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends the trial court erred in permanently renewing the DVRO because there was insufficient evidence that Jennifer A. and her parents' fear was genuine and reasonable as required by *Ritchie*. Appellant, however, has waived this contention. The Rules of Court require parties to summarize all "significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) Failure to state all of the evidence fairly in the brief waives alleged error. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) Appellant's opening brief is entirely deficient in this regard. Apart from a few select references to Jennifer A.'s testimony and to the declaration of Jennifer A.'s parents accompanying the renewal request, appellant does not discuss any of the other testimony or declarations that accompanied the renewal request. "[A]n appellant must do more than assert error and leave it to the appellate court to search the record . . . to test his claim." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557; see *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.)

Appellant waived his insufficiency-of-the-evidence claim as to Jennifer A.'s parents for an additional reason: that argument is not properly captioned under a heading as required. (See Cal. Rules of Court, rule 8.204(a)(1)(B); see *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 593, fn. 11.) We will not consider appellant's claim as to Jennifer A.'s parents any further.

4

That said, we will exercise our discretion to address appellant's claim regarding the alleged insufficiency of the evidence as to Jennifer A.

The purposes of the DVPA are "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.) The DVPA defines "abuse" broadly to include any behavior that could be enjoined under Family Code section 6320, such as harassing, telephoning, contacting by mail, or otherwise disturbing the peace of the other party. (Fam. Code, §§ 6203, subd. (a)(4) & 6320; *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536.) Family Code section 6345, which governs DVRO renewals, provides a DVRO "may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order."

Family Code "[s]ection 6345 does not provide a standard for a trial court to apply in deciding whether to grant a renewal request." (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 559.) But the Second Appellate District's opinion in *Ritchie, supra,* 115 Cal.App.4th 1275, thoroughly analyzed what the standard should be, and divisions of the First Appellate District have applied that standard. (*Cueto*, at pp. 559–562 [Division Two]; *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 397–400 [Division Four].)

The *Ritchie* court held that when a renewal request is contested, "[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse," meaning that "the evidence demonstrates it is more probable than not there is a sufficient risk of future

5

abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.)  It is not enough that the protected party entertains a subjective fear the restrained party will commit abusive acts in the future.  (*Id.* at p. 1288.)  "The 'apprehension' those acts will occur must be 'reasonable.'  That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) *in the same circumstances* would have a 'reasonable apprehension' such abuse will occur unless the court issues a protective order." (*Ibid.*, italics added.)  In line with Family Code section 6345, *Ritchie* indicated it is unnecessary for the protected party to introduce actual acts of abuse committed after the initial order went into effect.  (*Ritchie*, at p. 1284; see *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 515–516 [while "a party's violation of the DVRO can support a finding of reasonable apprehension," compliance with a DVRO does not preclude a finding of reasonable apprehension].)

The *Ritchie* court discussed various factors that would likely be relevant in evaluating whether a requesting party has a reasonable apprehension of future abusive acts.  Such factors include the factual circumstances supporting the issuance of the initial DVRO, and the *Ritchie* court cautioned that "the trial court should not permit the restrained party to challenge the truth of the evidence and findings underlying the initial order" as that would contradict principles of collateral estoppel and its underlying policies.  (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.)  "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order.  For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they

6

no longer support a renewal of the order?" (*Id.* at p. 1291.) Other relevant factors are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as social stigma or interference with job prospects. (*Ibid.*)

"We review the trial court's ruling under an abuse of discretion standard, to determine ' "whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333.) "In considering the evidence supporting such an order, 'the reviewing court must apply the "substantial evidence standard of review," meaning " 'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the trial court's finding. [Citation.] 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.' " ' " (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424.) Review of a substantial evidence claim " 'begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman, supra,* 3 Cal.3d at p. 881, italics omitted.)

Here, Jennifer A. testified she believes appellant will harass and disturb her peace absent a DVRO. She indicated he is "relentless[]" and will not "let go of things." He still labels her an "enemy" despite the passage of ten years, and she still feels the same level of danger and fear of him without a DVRO. She also indicated appellant has "mess[ed]" with her, for example, by filing lawsuits and "hunt[ing] [her] down" because she supposedly was

7

involved in conspiracies or was colluding against him with his other enemies. Jennifer A. testified that appellant conditioned her during their 16-and-a-half year marriage to "not make him mad" and that she and the children lived under appellant's "control and isolation," which they had to break away from. She moved "many miles" to get away from appellant, and to this day she takes part in the "Safe at Home" address protection program, stays off social media, and has frozen her credit because she believes appellant has used her identifying information to track her whereabouts.

J.C.—the 20-year-old son of Jennifer A. and appellant—testified that during the later years his family was together, when he was about 11 years old, the home was not a good environment for a child. It was common to hear raised voices late into the night and objects being thrown. There was tension between his parents, and appellant was "consumed" by court cases such that days would go by where J.C. did not see him. J.C. testified the last two years of living with his father was "mostly isolation," that he was homeschooled, and that he did not attend their usual religious congregation meetings or associate with other children. When he, his mother, and his brother moved out, a "whole world opened up" and he was able to spend time with friends, be outdoors, and interact with people. He said that although he did not personally feel like he needed the restraining order anymore, he appreciated it being there when he was younger because it allowed him to live "with a degree of freedom and peace of mind." With regard to his mother, he indicated that his mother's relationship with appellant was very different than his or his sibling's relationship with appellant, that she had "received the brunt of it," and that she is "very fragile now" and exhausted. He felt "very strongly" about his mother protecting herself and expressed surprise that the DVRO was not already permanent given all that happened.

Appellant himself testified that he was falsely convicted of attacking Jennifer A. and that his only fault was not leaving the scene of the incident, which led to the criminal conviction when he saw her there. He testified Jennifer A. wrongly interpreted him calling her an "enemy" in his court papers, and offered an interpretation of his use of the word enemy. With regard to his son's testimony, he said his children had a "great environment," and in their last year together there was no violence, though there were "strains."

Appellant's father testified he was aware of tension in the home. But even though Jennifer A. would regularly call appellant's father at 2:00 or 3:00 a.m. about an emergency, the father indicated that nothing was ever truly going on. Appellant's father was not present at the incident that led to appellant's criminal conviction, but he believed that his son was wrongly convicted and that Jennifer A. had witnesses lie about the incident. Appellant's mother also believed appellant was wrongly convicted.

In addition to the testimonial evidence, Jennifer A., her parents, and J.C. submitted declarations in support of the renewal request. Jennifer A.'s parents indicated, for example, that appellant's mother called them numerous times in 2017 and 2018 saying she wanted to see the children and also saying that appellant "was the head of the family and should be the one to decide" who could see the children. In 2019, Jennifer A.'s mother received an unnerving message from a private number at 11:00 p.m. from a woman identifying herself as a family friend asking, "How are the boys?" In 2016, a neighbor of Jennifer A.'s parents received a letter addressed to the neighbor " 'or current resident' " claiming that Jennifer A.'s father "set about pimping [Jennifer A.]," that Jennifer A.'s family had a history of psychiatric issues, and that Jennifer A. was sexually abused. The author of the letter said they

9

felt the neighbor had a right to know what type of people they lived next to, and referenced appellant's long fight with the Jehovah's Witness religious congregation from which appellant had been "disfellowshipped."

Viewing the evidence in the light most favorable to the order, we conclude substantial evidence supports the trial court's determination that Jennifer A.'s apprehension was genuine and reasonable, and that renewal of the DVRO was appropriate based on a sufficient risk of future abuse in the form of disturbance of Jennifer A.'s peace.[4] (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.) The evidence, including the facts underlying the issuance of the initial DVRO, establish that the last years of Jennifer A. and appellant's marriage had become toxic: there was evidence of violence in the home; appellant physically attacked Jennifer A. leading to a criminal conviction; appellant was controlling and isolated his family; and appellant was consumed by court cases and relentlessly engaged in legal proceedings believing Jennifer A. was an enemy conspiring with people who were after him. Though the details of the abuse could have been more thoroughly explained, it is reasonably clear that appellant's abusive behavior around the time of the initial DVRO so thoroughly disturbed Jennifer A.'s peace and traumatized her that she "put many miles" between herself and appellant, and that, to this day, she fears him enough to continue using an address protection program, avoiding social media, and freezing her credit. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) Her own son describes Jennifer A. as very fragile and exhausted.

---

[4] Given our conclusion, we need not and do not grant Jennifer A.'s requests for judicial notice of our 2014 decision concerning an appeal from a child visitation order, and "Case No.13-cv-01955-SW, filed in the U.S. District Court, Northern District of California."

Moreover, there is no evidence appellant has "moved on" with his life such that "the opportunity and likelihood of future abuse has diminished to the degree [the circumstances] no longer support a renewal of the order." (*Ritchie, supra,* 115 Cal.App.4th at p. 1291; see, e.g., *id.* at p. 1280 [both parties had married other people].) Appellant lives in the same general location; he continues to believe he was wrongly convicted in his criminal case and continues to seek to absolve himself; and there is evidence he still views Jennifer A. as his "enemy." Appellant points to the fact that he and Jennifer A. are no longer married, and that she moved and secreted herself as evidence of changed circumstances justifying the initial DVRO. He also notes the children are now adults and the civil actions he had been litigating are now closed. But these changes do not compel a different outcome, especially since they were largely achieved unilaterally by Jennifer A. who made those changes to protect herself and her children from appellant.

Appellant also argues the trial court fell short of meeting *Ritchie*'s requirement that it consider the burdens the DVRO places on him. But appellant fails to provide any record citations to support this claim. (Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.) Error is not presumed, and we presume an order to be correct and indulge all presumptions to support it on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Notably, aside from making a passing assertion that the DVRO has interfered with his employment prospects, appellant provides no record citations to evidence showing how the DVRO actually burdens his life. Our review of appellant's testimony discloses no evidence on that topic.

To the extent appellant suggests the trial court erred because it did not discuss the *Ritchie* standard when ruling on the renewal request, appellant's

failure to request a statement of decision bars that claim. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) In any event, the record indicates the court understood the governing law, and in ruling on the later motion for new trial, the court specifically stated its decision was consistent with *Ritchie*.

Finally, appellant contends the trial court abused its discretion by refusing to admit his evidence of letters and reports from mental health professionals. But the court excluded the evidence on hearsay and relevance grounds, and appellant's failure to have proffered a legal basis for its admissibility precludes review of the issue on appeal. (Evid. Code, § 354; *People v. Fauber* (1992) 2 Cal.4th 792, 854.) Even now, appellant offers no appellate argument supporting the admission of this evidence.

### DISPOSITION

The order is affirmed. Jennifer A. is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278.)

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Petrou, J.

*Jennifer A. v. Jason C.* (A165375)

12